IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS WALDT, et al.       :
                           :
v.                         :   Civil Action No. WMN-97-3917
                           :
KOMATSU AMERICA INDUSTRIES, :
   CORP., et al.           :

**MEMORANDUM**

Before the Court are the following motions: Defendants' Motion for Summary Judgment, Paper No. 22; Plaintiffs' Motion for Leave to Amend Complaint, Paper No. 26; and Defendants' Motion to Permit Withdrawal of any Deemed Admission, Paper No. 28. The motions are all fully briefed. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion to permit withdrawal of any admission and motion for summary judgment will be granted, and Plaintiffs' motion for leave to amend will be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff Thomas Waldt was employed as a manager in a warehouse that handled cargo coming through the Port of Baltimore. On April 18, 1995, Mr. Waldt was moving a 40-foot shipping container with a yard truck when the container tilted to one side, overturning the container as well as the yard truck and resulting in injuries to Mr. Waldt. According to Plaintiffs, the container tilted because the cargo in the container, a large

power press, had been improperly loaded.  Plaintiffs[1] brought this negligence action naming as Defendants Komatsu American Industries Corp. (KAIC) and Komatsu Industries Corp. (KIC).

The central issue in these pending motions is the identity of the entity or entities that either loaded the container in question or that can be held legally responsible for the manner in which it was loaded.  According to evidence submitted by Defendants, the press in question was manufactured in Japan by Komatsu Ltd.  It was then sold to Defendant KIC for eventual sale and shipment to KAIC in Illinois.  Through Komatsu Logistics Corp., Defendant KIC hired Marubeni Plant and Equipment (Marubeni), a shipping company, to arrange for the loading and shipping of the press on the vessel <u>Ever Grace</u>.  Marubeni arranged for Kamigumi, Ltd., a stevedore company, to load the container for shipment.[2]

Arguing that they had nothing to do with the actual loading of the press into the container, Defendants KIC and KAIC have moved for summary judgment.  Without offering any evidence to challenge Defendants' representations, Plaintiffs posit three

---

[1] Mr. Waldt's spouse, Nancy, was joined as a plaintiff, asserting a claim for loss of consortium.

[2] These facts were provided in the deposition testimony of Mr. Kimio Takasu, a former employee of KIC, who at the time of Mr. Waldt's accident was the individual in charge of the administration of exports of Komatsu presses to the United States.

2

different theories under which they assert that Defendants could be held liable: 1) that Defendant KIC should be deemed to have admitted that it was responsible for loading the press because KIC failed to timely respond to a request for admission;[3] 2) that there is at least a question of fact as to whether Marubeni and Kamigumi were agents of Defendants, as opposed to independent contractors; or 3) that even should the Court find that Marubeni and Kamigumi are independent contractors, exceptions to the "independent contractor defense" should allow the extension of liability to Defendants for the acts of Marubeni and Kamigumi.

The other two pending motions are closely related to Defendants' motion for summary judgment. In its motion to withdraw any deemed admission, Defendants argue that should the Court find that KIC is deemed to have admitted that it was responsible for loading the container, KIC should be permitted to withdraw that admission as inadvertently made. In Plaintiffs' motion to amend complaint, Plaintiffs seek to add Marubeni and Kamigumi as party defendants, and to expand the claims against KIC and KAIC to include various theories of vicarious liability. For the reasons that follow, the Court will allow KIC to withdraw

---

[3] Plaintiffs initially argued the both KIC and KAIC should be deemed to have admitted that they were responsible for loading the container. In a subsequent pleading, Plaintiffs withdrew this argument as to Defendant KAIC after conceding that KAIC had provided its response within the extended time period agreed upon by the parties.

the deemed admission, will grant summary judgment in favor of KIC and KAIC, will deny Plaintiffs' motion to amend insofar as it seeks to add new theories of recovery against KIC and KAIC, but will grant the motion insofar as it seeks to add Marubeni and Kamigumi as defendants.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the movant meets its burden, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. Id. at 324. In assessing such a motion, the court must view the evidence and all justifiable inferences in the light most favorable to the non-moving party. Felty v. Graves-Humphrey Co., 818 F.2d 1126, 1129 (4th Cir. 1987). Unsupported speculation is, however, insufficient to defeat a

motion for summary judgment. <u>Id.</u> at 1128 (citing <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1976)). Additionally, the existence of only a "scintilla of evidence" is also insufficient. Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

## III. DISCUSSION

A. <u>Defendant KIC's "Deemed Admission"</u>

This action was filed on November 19, 1997. On August 6, 1998, Plaintiffs served requests for admissions on both Defendants seeking, inter alia, information as to the identity of the entity or entities responsible for loading the container. Because the loading took place in Japan and most of the documents and information related to the shipment of the press were located in Japan and were written in Japanese, counsel for Defendants experienced considerable difficulty in obtaining responses. Counsel communicated with the Court on several occasions, both by status letters and by conference calls, concerning these difficulties in completing discovery. Plaintiffs' former counsel acknowledged that "counsel for both parties have been diligent" and also conceded some time ago that the Defendants named in the instant litigation may not be the entities or the agents of the entity which loaded the container. <u>See</u> Exh. 16 to Defendants'

5

Summary Judgment Motion, Letter from Robert C. Verderaime to Court dated August 4, 1999.

Within the time for responding to the initial request for admissions, Plaintiffs' former counsel agreed that Defendants could have until the end of October 1998 to respond. Within that extended period, KAIC filed its response, denying that it loaded the container in question. At the same time, counsel for Defendants sent a letter to Plaintiffs' former counsel advising him that he was awaiting information from Defendant KIC in Japan and would forward that information as soon as it was received. Defendants' counsel represents that on November 3, 1998, he advised Plaintiffs' former counsel by telephone that preliminary information from Japan revealed that KIC did not load the container in question.[4] On January 27, 1999, Defendants' counsel confirmed in a letter to Plaintiffs' former counsel that KIC did not load the container and that Kamigumi was the party that did. See Exh. 8 to Defendants' Motion for Summary Judgment, Letter from H. Bruce Dorsey to Robert C. Verderaime. Defendant KIC filed its formal response to the request for admissions on January 30, 1999. Because the response was untimely, Plaintiffs contend that, pursuant to the operation of Rule 36 of the Federal

---

[4] Plaintiffs' former counsel has submitted an affidavit in which he states that he has no recollection of the November 3, 1998 telephone call but has "no reason to doubt statement of counsel for defendants." Verderaime Aff. at ¶ 6.

Rules of Civil Procedure, KIC should be deemed to have admitted that it loaded the container.

There is no real dispute that Defendant KIC's response to Plaintiffs' requests for admissions was technically untimely. The Court will thus assume that there is an admission on the part of KIC that it loaded the container. Rule 36(b), however, allows the Court to permit withdrawal of the admission under certain circumstances. The standard for allowing withdrawal under Rule 36(b) consists of two prongs; 1) whether the presentation of the merits will be subserved by allowing the withdrawal, and 2) whether the withdrawal of the admission will prejudice the party that has obtained the admission. See McClanahan v. Aetna Life Ins. Co., 144 F.R.D. 316, 320 (W.D. Va. 1992). Furthermore, the Court is afforded broad discretion in determining whether to allow withdrawal. "The decision to allow a party to withdraw its admission is quintessentially an equitable one, balancing the rights to a full trial on the merits, including the presentation of all relevant evidence, with the necessity of justified reliance by parties on pre-trial procedures and finality as to issues deemed no longer in dispute." Id.

As to the first prong, there is no question that the presentation of the merits is subserved by the allowance of withdrawal. "The first prong permits withdrawal if it will facilitate the development of the case in reaching the truth, as

in those cases where a party's admission are inadvertently made." Id. Here, Plaintiffs do not seriously contend that KIC loaded the container or that it intended to make any such admission.

As to the second prong, "[t]he prejudice referred to . . . derives from the difficulty the party opposing the motion to withdraw will face as a result of the <u>sudden</u> need to obtain evidence to prove the matter it had previously relied upon as answered." Id. (quoting 4A Jeremy C. Moore, et al., Moore's Federal Practice, ¶ 36.08)(emphasis added by this Court). Plaintiffs cannot maintain that they reasonably relied on this "admission." As early as November 1998, Plaintiffs were advised that KIC was probably not the party that had loaded the container. After KIC's formal response to the request for admissions was filed, Plaintiffs requested a corporate designee knowledgeable about the relationship between Defendants and Kamigumi to appear at deposition. Defendants provided that individual for deposition in Japan on July 14, 2000.[5] Following the deposition, Plaintiffs propounded additional discovery based upon issues arising from the deposition, to which Defendants responded.

Given this history, Plaintiffs cannot contend that they were

---

[5] The delay in taking this deposition resulted from logistical difficulties in arranging for the taking of a deposition in Japan. Plaintiffs have not argued that Defendants are at fault for causing this delay.

8

somehow lured into thinking that the issue of the identity of the entity that had loaded the container had been resolved. To the contrary, this issue has been contested since the outset of this litigation, as the course of dealings between counsel readily reveals. The Court finds no "prejudice" to Plaintiffs in allowing the withdrawal, at least no prejudice as that term is considered under Rule 36.[6]

B. Defendants' Vicarious Liability for Acts of Kamigumi or Marubeni

Absent an admission or any evidence that Defendants took part in loading the container, Plaintiffs must rely on some theory of agency to render Defendants liable for Mr. Waldt's injury. While there is admittedly little evidence in the record concerning the relationship between Defendants and Marubeni and Kamigumi, what evidence there is decisively points to the conclusion that Marubeni and Kamigumi functioned merely as independent contractors.

In his deposition, Mr. Takasu testified that KIC, through

---

[6] Plaintiffs' only argument for prejudice is their concern that claims against the parties actually responsible for loading the container may now be barred by the statute of limitations. That is not the kind of prejudice considered by courts under Rule 36(b). In addition, the Court notes that Plaintiffs share some of the responsibility for the delay in discovering the proper defendants. Plaintiffs waited until almost two and one half years after the accident before filing suit. Furthermore, as Defendants have noted, Plaintiffs had in their possession a document that identified Kamigumi as the stevedore in the transaction, as early as August 6, 1998, and perhaps as early as the time that they filed suit.

Komatsu Logistics, ordered Marubeni to make the arrangements to ship the press and that Marubeni hired Kamigumi to pack the press for shipment. Takasu Dep. at 16. KIC gave Kamigumi no instruction whatsoever as to how to pack the press, relying on Kamigumi's expertise as a stevedore company. Id. at 17-19. Nor did KIC have any other type of control over the manner in which Kamigumi loaded the container. Id. at 25. He also testified that prior to shipment in question, KIC was not aware of any prior complaints of improper container loading on the part of Marubeni or Kamigumi. Id. at 24. Furthermore, Takasu testified that Defendants had no ownership interest in either Marubeni or Kamigumi, id. at 23, nor did they contractually assume any responsibility for any damages caused to third parties in relation to shipments. Id. at 19.

Plaintiffs offer nothing in response to Mr. Takasu's testimony. In their pleadings, Plaintiffs do speculate that Defendants may have contractually agreed to hold Marubeni and Kamigumi harmless for claims arising from the loading of the power press and that this agreement might constitute legally sufficient evidence that Defendants had a right of control over Marubeni and Kamigumi sufficient to support a finding of agency. Plaintiffs' Opp. to Summary Judgment Mot. at 12-13 (citing Premier Parks, Inc. v. Baltimore Gas and Electric Co., 37 F.Supp.2d 732 (D. Md. 1999)). Plaintiffs provide no evidence of

such a contract, however.[7]

The only "evidence" that Plaintiffs proffer in support of their agency theory is a marine insurance policy for the power press which was obtained and paid for by KIC. Plaintiffs argue that KIC's procurement of such a policy "constitutes legally sufficient evidence supporting an inference that Marubeni Plant and Kamigumi were acting as servants of the Defendants." Plaintiffs' Opp. to Summary Judgment at 13 (citing Keitz v. National Paving & Contracting Co., 214 Md 479 (1957)). The Court disagrees.

Keitz was a "borrowed servant" case where the driver of a dump truck hired out to a paving company was involved in an accident that caused injury to a third party. The Maryland Court of Appeals held that evidence that the owner of the dump truck carried automobile liability insurance on her trucks, and the paving company did not, was relevant evidence concerning the relationship between the truck owner and the paving company.

---

[7] Plaintiffs insinuate that Defendants are withholding relevant documents. See Plaintiffs' Reply in Support of Motion for Leave to Amend Complaint at 4 n.1 ("Plaintiffs expect that they will need to file Motions to Compel based upon Defendants' lack of diligence in providing the requested information and failure to perform an adequate search for responsive documents."). Defendants note, however, that Plaintiffs did not object to any of the responses or documents produced by Defendants during the discovery period. Now that discovery has closed and a motion for summary judgment has been filed, it is too late for Plaintiffs to complain about Defendants' production in discovery absent some newly discovered evidence of this alleged lack of diligence.

11

Here, the policy in question is a policy that protects against risks to the power press, not liability arising from injuries to third parties as in <u>Keitz</u>. To use a commonplace analogy, simply because an individual insures a package sent by the Postal Service does not give rise to any inference that this individual controls, or is somehow responsible for injuries caused by, the acts of the Postal Service in delivering the package.

In the absence of any evidence that Marubeni and Kamigumi were not independent contractors, Plaintiffs attempt to shoehorn the circumstances at bar into several of the exceptions to the rule of non-liability for the acts of independent contractors found in the Restatement(Second) of Torts. <u>See</u> Plaintiffs' Motion in Opp. at 16-18 (citing Restatement(Second) of Torts §§ 410, 411, 412, 413, 416). The Court finds no merit in these arguments.

Section 410 imposes potential liability on employers of independent contractors where the physical harm is caused by "an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer." Here, it is undisputed that Defendants gave no instructions regarding the loading of the containers.[3] Section 411 imposes liability for

---

[3] Plaintiffs also argue that the failure to give instructions was itself negligent. For Plaintiffs to prevail on this theory, however, they would need to come forward with some evidence, probably in the form of expert testimony, that there was a duty to give instructions in this circumstance. There is

the negligent selection of a contractor.  Plaintiffs, however, have provided no evidence that it was unreasonable for Defendants to rely on the competence of Marubeni and Kamigumi.

The remaining three exceptions are equally inapplicable. Section 412 relates to the responsibility to inspect the completed work of contractors making "repair and maintenance" to land or chattel.  This is not a situation involving either repair or maintenance.  Sections 413 and 416 relate to situations where a contractor is employed in work "likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken."  The comments to section 413 make clear that the phrase "peculiar risk and special precautions" is not to be construed so broadly as to allow the exception to swallow the rule of non-liability for the acts of independent contractors.

> It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result.  Thus one who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur.  <u>This Section has no reference to such a general anticipation of the possibility that the contractor may in</u>

---

nothing in the record upon which a jury could conclude that Defendants could not reasonably rely on the expertise of a professional shipping company and professional stevedore company.

13

>        <u>some way be negligent.</u>  It is not concerned
>        with the taking of routine precautions, of a
>        kind which any careful contractor could
>        reasonably be expected to take, against all
>        of the ordinary and customary dangers which
>        may arise in the course of the contemplated
>        work.

Restatement(Second) of Torts, § 413. cmt. b (emphasis added).

### C. Motion to Amend Complaint

In their Motion to Amend Complaint, Plaintiffs seek to add to the Complaint these new theories of liability which they offered in opposing the summary judgment motion.  For the reasons stated above, the Court finds these theories unsupported by the evidence currently in the record.[9]  The Court also concludes that, at this stage in the proceedings, it is too late to allow Plaintiffs to renew discovery efforts in the hope of finding some support for these theories.  Plaintiffs have known since January 1999, that Kamigumi was the entity that loaded the press.  After Kamigumi's role in the incident was revealed, Plaintiffs were provided the opportunity to engage in discovery related to the relationship between Kamigumi and Defendants.  Plaintiffs waited until February of this year and only after Defendants filed a motion for summary judgment before they filed a motion to amend the complaint or began to complain about the adequacy of

---

[9] Plaintiffs essentially concede that the current record is insufficient to support these new theories and acknowledge that "additional discovery will need to be conducted should leave to amend the complaint be granted."  Reply in Support of Motion to Amend at 4.

Defendants' discovery responses.

Thus, the Court finds amendment of the complaint to include additional theories of liability against the current Defendants to be futile. That portion of the motion to amend that seeks to bring in Marubeni and Kamigumi as new defendants, however, the Court will grant. While it appears that claims against these parties may be barred by the applicable statute of limitations, that issue is not currently presented to the Court in a posture in which the Court can decide it.

A separate order consistent with this memorandum will issue.

                                      William M. Nickerson
                                      United States District Judge

Dated: September 10, 2001.